**Opinion issued January 26, 2016**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-14-00621-CR

————————————

**TRAVIS BRANDON AYERS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 230th District Court**
**Harris County, Texas**
**Trial Court Case No. 1394860**

---

## MEMORANDUM OPINION

Appellant, Travis Brandon Ayers, pleaded no contest to the offense of

intoxication manslaughter[1] in exchange for the State's agreement to abandon the

allegation that he used a deadly weapon during the commission of the offense.

---

[1]    *See* TEX. PENAL CODE ANN. § 49.08 (Vernon 2011).

Following a presentence investigation ("PSI"), the trial court assessed appellant's punishment at confinement for thirteen years. In two issues, appellant contends that his trial counsel provided him with ineffective assistance and the trial court erred in not sua sponte ordering that he be evaluated for his competency to stand trial and not conducting a hearing on the issue.

We affirm.

**Background**

Prior to accepting appellant's plea, the trial court, noting that it had been "presented with evidence" that appellant had previously "suffered a traumatic brain injury," ordered that he undergo a "psychiatric or medical exam to determine whether he need[ed] psychiatric and/or medical care and/or medication." Dr. Ydalith Rivera-Perez subsequently provided a "Psychiatric or Medical Status Report," in which she stated that she had determined, after examining appellant, that he "need[ed] a formal mental health evaluation." Appellant's trial counsel then filed a motion requesting a competency evaluation, as follows:

> Based on a full investigation in this case, the undersigned counsel believes there is an issue as to whether [appellant] is competent to participate in the legal process. [Appellant] suffered a traumatic brain injury in the accident at issue in this cause and is still suffering from that injury. After consulting with his current doctor, counsel was informed that it is believed that [appellant] needs to be evaluated by a neuropsychologist to determine competency. This recommendation is due to a need for a specialist because of the issues involved in traumatic brain injuries. . . .

2

Appellant's counsel then requested that the trial court appoint Dr. Corwin Boake, an expert in the areas of "neuropsychology and competency," to evaluate appellant, and the trial court granted the request. Boake's report and findings are not contained in the record.

At the plea hearing, the following discussion took place:

| | |
|---|---|
| [Trial Court]: | Do you [appellant] understand that even though you're pleading no contest, the State still must present evidence to me that would satisfy a finding of guilt, should it come to that, and that you are agreeing that if the witnesses were called to testify, that they would come and testify that you were, in fact, guilty? Do you understand that? |
| [Appellant]: | Yes, sir. |
| [Trial Court]: | Has anybody promised you anything, forced you, threatened you, coerced you in any way to make you enter this plea? |
| [Appellant]: | No, sir. |
| [Trial Court]: | You have the right to have a jury trial in your case, to have citizens selected to see if the State can prove to them that you're guilty. They would try to do that by calling witnesses, which you have to right to confront and cross-examine. These papers say you want to give up these rights; is that correct? |
| [Appellant]: | Yes, sir. |
| . . . . | |
| [Trial Court]: | . . . The range of punishment for your offense is not less than two nor more [than] 20 years in prison and a fine not to exceed $10,000. You do not have an agreed recommendation from the State in this case. Instead you are asking me to assess your punishment after a presentence investigation report is made and we have a sentencing hearing. |

|                | What I need to make sure that you understand and I want to say on the record is that I have absolutely no idea—and I told your lawyer this beforehand.  I have no idea what I would do in your case, none.  I don't know what the outcome will be.  I make you no promises on what that outcome will be.  The only thing that I will promise you is that I will not make a decision on what your sentence will be until I have read everything that's presented to me in the report, read any letters or other reports that either side wants to submit to me.  And I will also wait until I've heard from all the witnesses that want to testify or need to testify in this sentencing hearing that we're going to have.  After then is when I will make my decision.  I will not make a decision before then.  So, therefore that means there are no promises made to you right now.  Do you understand that? |
|----------------|----------|
| [Appellant]:   | Yes, sir. |
| [Trial Court]: | And understanding that, you still wish to go forward? |
| [Appellant]:   | Yes, sir. |
| [Trial Court]: | Have you had enough time to review all this information with your attorney and ask all the questions that you need to? |
| [Appellant]:   | Yes, sir. |
| [Trial Court]: | Have you [defense counsel] had enough time to review this information with your client and answer all his questions and *do you feel he is competent to go forward with this plea*? |
| [Counsel]:     | I have and *he is*, Your Honor. |
| [Trial Court]: | All right.  Now, as we talked before, even though you're pleading no contest, the State still has to present some evidence of your guilt.  They do that by signing these papers along with you and your attorney.  This is a stipulation—this is a waiver of constitutional rights and agreement to stipulate, |

4

|  | where you are giving up the rights that we've talked about and you're agreeing to stipulate that if the witnesses were called, they would testify that you are, in fact, guilty. Do you understand that? |
|---|---|
| [Appellant]: | Yes, sir. |
| [Trial Court]: | The next page says where you're going to have this sentencing hearing for me to decide what your punishment will be and then your signature. Is that your signature? |
| [Appellant]: | Yes, sir. |
| [Trial Court]: | And did you understand that by signing this, that you are giving up those rights? |
| [Appellant]: | Yes, sir. |
| [Trial Court]: | Pages after that are admonishments which explain[] everything to you in writing. Are those your initials there? |
| [Appellant]: | Yes, sir. |
| [Trial Court]: | Did you understand all this information? |
| [Appellant]: | Yes, sir. |

(Emphasis added.) The trial court then found appellant guilty of the offense of intoxication manslaughter.

At the subsequent punishment hearing, Holly Magee, the complainant's sister, testified that on March 21, 2013, she and the complainant, Julia Wardwell, attended a barbecue with Magee's co-worker, Jackie Ramirez. At approximately 10:00 p.m., as Magee and the complainant were leaving, Ramirez and her husband, appellant, asked Magee to drive them to a nearby storage unit to retrieve appellant's all-terrain vehicle ("ATV"). After dropping off appellant at the storage

5

unit, Magee then drove the complainant, Ramirez, and several children from the barbecue to a field behind a carwash to ride the ATV. When appellant offered the complainant a ride, she climbed onto the back of the ATV behind him. Instead of driving into the field, however, appellant "took off very fast" into the "dark" and "busy street" and out of sight. Minutes later, Ramirez told Magee that the ATV had crashed at an intersection. The complainant was taken to a hospital, where she died several hours later.

Appellant's mother disputed that appellant was driving the ATV at the time it collided with a sport-utility vehicle at the intersection. Appellant was "life-flighted" from the scene to a hospital, where he was in a coma for sixteen days. He suffered a traumatic brain injury, does not remember the collision, and has since had difficulty remembering his location and to eat and shower. Appellant's mother noted that he is on "four medications."

The trial court admitted into evidence appellant's medical records and the PSI report. In the report, the investigator noted that blood drawn from appellant after the collision tested positive for marijuana and revealed a blood-alcohol concentration of 0.09 percent. The investigator also noted that appellant "did complete a Competency Evaluation with an independent doctor and per [the] defense attorney, [he] was found competent."

6

**Competency**

In his second issue, appellant argues that the trial erred in not sua sponte ordering that he be evaluated for his competency to stand trial and not conducting a hearing on the issue because "[t]here is undisputed evidence that [he] suffered a traumatic brain injury."

We review challenges to a trial court's determination of a defendant's competency to stand trial for an abuse of discretion. *See Luna v. State*, 268 S.W.3d 594, 600 (Tex. Crim. App. 2008); *George v. State*, 446 S.W.3d 490, 503 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd). A trial court's first-hand factual assessment of a defendant's competency is entitled to great deference on appeal. *Ross v. State*, 133 S.W.3d 618, 627 (Tex. Crim. App. 2004). "A defendant is presumed competent to stand trial and shall be found competent to stand trial unless proved incompetent by a preponderance of the evidence." TEX. CODE CRIM. PROC. ANN. art. 46B.003(b) (Vernon 2006).

"A criminal defendant who is incompetent may not be put to trial without violating due process." *Turner v. State*, 422 S.W.3d 676, 688 (Tex. Crim. App. 2013). And "'[t]his constitutional right cannot be waived by the incompetent—by guilty plea or otherwise.'" *Bouchillon v. Collins*, 907 F.2d 589, 592 (5th Cir. 1990) (quoting *Carroll v. Beto*, 421 F.2d 1065, 1067 (5th Cir. 1970)). "'[A] person whose mental condition is such that he lacks the capacity to understand the

7

nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense, may not be subjected to trial.'" *Turner*, 422 S.W.3d at 688–89 (quoting *Drope v. Missouri*, 420 U.S. 162, 171, 95 S. Ct. 896, 903 (1975)). Thus, a defendant is incompetent to stand trial if he does not have a sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding or a rational, as well as factual, understanding of the proceedings against him. TEX. CODE CRIM. PROC. ANN. art. 46B.003(a).

Upon a suggestion that a defendant may be incompetent, a trial court shall determine by "informal inquiry" whether there is "some evidence" from any source that would support a finding that the defendant may be incompetent to stand trial. *Id*. art. 46B.004(c) (Vernon Supp. 2015); *see Druery v. State*, 412 S.W.3d 523, 538 (Tex. Crim. App. 2013) (informal inquiry intended to determine whether issue of competency sufficiently raised such that formal hearing should be held). Either party may suggest by motion, or a trial court may suggest on its own motion, that a defendant may be incompetent to stand trial. TEX. CODE CRIM. PROC. ANN. art. 46B.004(a). A suggestion of incompetence "may consist solely of a representation from any credible source." *Id*. art. 46B.004(c–1). "A further evidentiary showing is not required to initiate the inquiry, and [a] court is not required to have a bona fide doubt about the competency of [a] defendant." *Id*.

8

"Evidence suggesting the need for an informal inquiry may be based on observations made in relation to one or more of the factors described by Article 46B.024 or on any other indication that the defendant is incompetent within the meaning of Article 46B.003." *Id.* The factors include whether the defendant can: "(A) rationally understand the charges against [him] and the potential consequences of the pending criminal proceedings; (B) disclose to counsel pertinent facts, events, and states of mind; (C) engage in a reasoned choice of legal strategies and options; (D) understand the adversarial nature of criminal proceedings; (E) exhibit appropriate courtroom behavior; and (F) testify." *Id.* art. 46B.024(1) (Vernon Supp. 2015). Further, the trial court "may appoint" an expert to: (1) examine the defendant and report to the court on his competency or incompetency and (2) testify as to the issue of competency or incompetency of the defendant at any trial or hearing involving that issue. *Id.* art. 46B.021(a) (Vernon 2006).

If, after its informal inquiry, the trial court determines that "evidence exists to support a finding of incompetency to stand trial," the trial court "shall appoint" an expert to perform the duties listed in subsection (a). *See id.* art. 46B.021(b); *Turner*, 422 S.W.3d at 692. And the trial court "shall hold a trial . . . before determining whether [a] defendant is incompetent to stand trial on the merits," unless: (1) neither party's counsel requests a trial on the issue of incompetency; (2)

neither party's counsel opposes a finding of incompetency; and (3) the court does not, on its own motion, determine that a trial is necessary to determine incompetency. TEX. CODE CRIM. PROC. ANN. art. 46B.005(b), (c) (Vernon 2006).

Here, the trial court, after noting that it had been "presented with evidence" that appellant had previously "suffered a traumatic brain injury," ordered a psychiatric exam "to determine if [appellant] need[ed] psychiatric and/or medical care and/or medication." And Dr. Rivera-Perez provided a "Psychiatric or Medical Status Report," in which she stated that she had determined that appellant "need[ed] a formal mental health evaluation." Appellant's trial counsel then filed a motion asking the trial court to appoint an expert, Dr. Boake, to perform an evaluation of appellant's competency to stand trial because, based on his brain injury, she believed that there was "an issue" as to whether appellant was "competent to participate in the legal process." The trial court then appointed Boake to evaluate appellant "for competency" to stand trial. Thus, the trial court did order an evaluation of appellant's competency to stand trial. *See id.* art. 46B.021(a), (b); *Turner*, 422 S.W.3d at 692.

The mere fact that the trial court ordered an evaluation, however, does not constitute evidence that appellant was in fact incompetent to stand trial. *See Criswell v. State*, 278 S.W.3d 455, 459 (Tex. App.—Houston [14th Dist.] 2009, no pet.); *McGowan v. State*, No. 14-05-00139-CR, 2006 WL 56105, at *2 (Tex.

10

App.—Houston [14th Dist.] Jan. 12, 2006, pet. ref'd) (not designated for publication) (order for evaluation not evidence of incompetency). The trial court could have, within its discretion, simply ordered that appellant be evaluated. *See* TEX. CODE CRIM. PROC. ANN. art. 46B.021(a).

Further, the trial court was not required to hold a hearing in this case because (1) neither party's counsel requested a trial on the issue of incompetency; (2) neither party's counsel opposed a finding of incompetency; and (3) the court did not, on its own motion, determine that a trial was necessary to determine incompetency. *See id.* art. 46B.005(b), (c).

Although there was evidence before the trial court that appellant had suffered a brain injury and was experiencing memory issues, the relevant inquiry is whether his mental instability was such that he lacked the capacity to understand the nature of, and object to, the proceedings against him, to consult with counsel, and to assist in preparing his defense. *See Turner*, 422 S.W.3d at 689–91; *Horan v. State*, No. 08-07-00222-CR, 2009 WL 2951918, at *5 (Tex. App.—El Paso Sept. 16, 2009, no pet.) (not designated for publication) (explaining essential distinction between impairment and incompetence). The fact that a defendant is mentally ill does not by itself mean that he is incompetent. *Turner*, 422 S.W.3d at 691.

Moreover, appellant told the trial court that he had thoroughly discussed his case with his trial counsel and understood the consequences of his plea. Although a defendant's "own bare assertions of competency" are not conclusive, they "should be considered, along with the entire record." *Tate v. State*, No. 01-95-00391-CR, 1996 WL 433989, at \*2 (Tex. App.—Houston [1st Dist.] Aug. 1, 1996, pet. ref'd) (not designated for publication). And a trial court's first-hand factual assessment of a defendant's competency is entitled to great deference on appeal. *Ross v. State*, 133 S.W.3d 618, 627 (Tex. Crim. App. 2004). Further, appellant's trial counsel told the trial court that appellant was competent to enter his plea. Nothing in the record suggests that appellant lacked "sufficient present ability to consult with [his] lawyer with a reasonable degree of rational understanding[] or a rational as well as factual understanding of the proceedings against [him]." *See* TEX. CODE CRIM. PROC. ANN. art. 46B.003(a); *Moore v. State*, 999 S.W.2d 385, 395 (Tex. Crim. App. 1999) ("Evidence of mental impairment alone does not require that a special jury be empaneled where no evidence indicates that a defendant is incapable of consulting with counsel or understanding the proceedings against him.").

Here, the trial court could have reasonably concluded that appellant had an understanding of the nature of the proceedings and an ability to consult with counsel with a reasonable degree of rational understanding. *See Turner*, 422

S.W.3d at 689–91. Accordingly, we hold that the trial court did not err in not conducting a hearing on the issue of appellant's competency to stand trial.

We overrule appellant's second issue.

## Ineffective Assistance of Counsel

In his first issue, appellant argues that his trial counsel provided him with ineffective assistance because counsel did not "obtain a competency evaluation and . . . request a competency hearing prior to appellant's plea and punishment hearing."

To prove a claim of ineffective assistance of counsel, appellant must show that (1) his trial counsel's performance fell below an objective standard of reasonableness and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687–88, 694, 104 S. Ct. 2052, 2064, 2068 (1984); *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068. In reviewing counsel's performance, we look to the totality of the representation to determine the effectiveness of counsel, indulging a strong presumption that counsel's performance falls within the wide range of reasonable professional assistance or trial strategy. *See Robertson v. State*, 187 S.W.3d 475, 482–83 (Tex. Crim. App.

13

2006).  Appellant has the burden to establish both prongs by a preponderance of the evidence.  *Jackson v. State*, 973 S.W.2d 954, 956 (Tex. Crim. App. 1998).  "An appellant's failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other prong."  *Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009).

As discussed above, the record shows that appellant's trial counsel did file a motion requesting that Dr. Boake be appointed to conduct an evaluation of appellant's competency to stand trial.  Although the record does not contain Boake's report, nothing in article 46B requires that an expert's report be admitted into evidence.  *See* TEX. CODE CRIM. PROC. ANN. art. 46B.025 (Vernon Supp. 2015) ("The court shall direct an expert to provide the expert's report to the court and the appropriate parties . . . ."); *Horan*, 2009 WL 2951918, at *5 (record devoid of expert report raised no inference that issue of defendant's competence left unresolved); *see also* TEX. CODE CRIM. PROC. ANN. art. 46B.007 (Vernon 2006) (limiting admissibility of evidence and expert testimony from competency proceedings).

Further, counsel was not deficient in not requesting a hearing on appellant's competency if Dr. Boake concluded that appellant was in fact competent to stand trial.  Generally, a silent record, as here, that provides no explanation for counsel's

14

actions will not overcome the strong presumption of reasonable assistance. *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005).

Appellant argues that his trial counsel was deficient in not requesting a hearing because counsel was "privy to" evidence that appellant was "receiving disability payments for his brain injury"; "[l]etters from five people stat[ed] that they have noticed changes in [his] mental health since his accident"; his family's reports that he has "persistent symptoms related to his brain injury including significant problems with short term memory, planning, problem solving and impaired judgment"; and his treating physician's statement that he was in need of a thorough mental assessment. Although this evidence reveals that appellant was experiencing memory and judgment issues as a result of his brain injury, it does not establish that his mental instability was such that he lacked the capacity to understand the nature of, and object to, the proceedings against him, to consult with counsel, and to assist in preparing his defense. *See Turner*, 422 S.W.3d at 689–91; *Horan*, 2009 WL 2951918, at *5.

Accordingly, we hold that appellant has not shown that his trial counsel's performance fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 687–88, 104 S. Ct. at 2064; *Lopez*, 343 S.W.3d at 143–44.

We overrule appellant's first issue.

## Conclusion

We affirm the judgment of the trial court.


                                    Terry Jennings
                                    Justice

Panel consists of Justices Jennings, Higley, and Brown.

Do not publish.   TEX. R. APP. P. 47.2(b).